IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 13, 2018

## JAMES CHRONICLES COBB v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-17-137         Roy B. Morgan, Jr., Judge**

_____

### No. W2017-01828-CCA-R3-PC
_____

Petitioner, James Chronicles Cobb, appeals the denial of his petition for post-conviction relief. Petitioner argues that he received ineffective assistance of counsel and that his guilty plea was unknowing and involuntary. After a review of the record and the briefs of the parties, we determine Petitioner has failed to establish that he received ineffective assistance of counsel and Petitioner's guilty plea was knowingly and voluntarily entered. Accordingly, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ALAN E. GLENN, JJ., joined.

Joseph T. Howell, Jackson, Tennessee, for the appellant, James Chronicles Cobb.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Jody S. Pickens, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Petitioner pled guilty to a laundry list of offenses, including multiple drug possession charges, multiple theft charges, multiple firearm possession charges, and a drug sale charge. The charges spanned six case numbers and twenty-seven counts.

At the outset of the guilty plea hearing, the trial court advised Petitioner, "[I]f there's anything taking place [that] you do not understand, you have a right to interrupt

me and ask your attorney, the State or the Court to explain further. You understand you have that right?" Petitioner replied, "Yes, sir." Additionally, the post-conviction court asked Petitioner if he was satisfied with plea counsel's representation, and Petitioner replied, "Yes, sir." Before accepting Petitioner's plea, the trial court went over each charge against the Petitioner and explained the sentence length and the percentage of the sentence that Petitioner would be required to serve. At the end of the review of his charges, the trial court stated, "So you understand, [Petitioner], based upon the consecutive sentence, your total effective sentence under 16-193 is a 23-year sentence, and you'd have some of it at 100 percent and some of it at 35 percent. You understand that?" Before Petitioner could respond, plea counsel interjected and asked if he could state the sentence in a way that Petitioner understood. Plea counsel said, "He has a 15-year sentence umbrella at 35 percent. Then he has a 6-year at 100 percent consecutive. Then he has 2 years at 35 percent after the 6 years at 100." The trial court asked, "And the total effective sentence then is?" Plea counsel said, "23 years." The trial repeated, "23 years. You understand that, [Petitioner]?" Petitioner responded, "Yes, sir." A few moments later, the trial court asked, "Any questions about it?" Petitioner replied, "No, sir." Before the plea agreement was accepted, the trial court asked three questions, "Do you have any questions about your plea agreement?"; "Do you still wish me to approve it?"; and "[Y]ou understand absolutely you cannot change your mind later?" Petitioner had no questions, indicated that he wanted the trial court to approve the agreement, and said he understood that he could not change his mind.

After asking if anyone had questions, the trial court found that Petitioner entered his pleas freely, voluntarily, knowingly, and intelligently. The court accepted the plea and sentenced Petitioner accordingly. Petitioner filed a pro se petition for post-conviction relief challenging the knowing and voluntary nature of his plea and alleging ineffective assistance of plea counsel.

At the post-conviction hearing, Petitioner testified that he retained plea counsel to represent him on all of the charges that were subject to the plea agreement. Petitioner acknowledged that he stated during the plea colloquy that he understood the terms of the plea agreement and that he was satisfied with his attorney. However, when he received the paperwork for his plea agreement, he did not recognize or understand how he was sentenced. He referenced the various sentence lengths and the percentages, and then, he stated that he thought that he would be receiving "one sentence." Petitioner stated, "I didn't think everything was [going to] run wild. I was thinking that everything was [going to] be one sentence." Additionally, Petitioner said he felt rushed on the day that he pled guilty. Petitioner's belief at the time he pled guilty was that he would receive a fifteen-year sentence at thirty-five percent.

On cross-examination, the State inquired if the post-conviction court told Petitioner that the total effective sentence would be twenty-three years. Petitioner agreed that the trial court said twenty-three years. The State asked Petitioner, "You do understand what the word[s] 23 years mean[?]" Petitioner replied, "Yes. 23 years?" The State then asked Petitioner if he said that he understood what the trial court was doing when the trial court stated that the fifteen-year sentence, the six-year sentence, and the two-year sentence ran consecutively. Petitioner responded, "Right." Petitioner then attempted to explain how twenty-three years could be interpreted multiple ways.

Petitioner indicated that he only completed the fifth grade. Further, he testified that he had been in court many times. Petitioner also protested his innocence to the firearm possession charges.

Plea counsel also testified at the post-conviction hearing. Plea counsel had practiced law for twenty-five years with at least half of his practice consisting of criminal work. He was retained by Petitioner to represent him on the charges subject to the plea agreement. Plea counsel reviewed all of the discovery materials and met with Petitioner multiple times. Plea counsel was successful in negotiating Petitioner's plea down from the original offer made by the State. Plea counsel stated that he discussed the sentences for each case with Petitioner separately and then discussed his sentence for all of the cases collectively. Plea counsel believed that Petitioner understood his plea bargain.

On the day of the plea, Petitioner and plea counsel reviewed each plea form, each charge, and each indictment. Plea counsel said that it was his practice to keep a copy of the plea agreement with him at the podium so Petitioner could refer to each line of the plea agreement as the plea was being taken by the trial court.

Following the testimony at the hearing, the post-conviction court noted that there were discrepancies in the testimony and found plea counsel to be credible. The post-conviction court found Petitioner alleged that he did not understand his agreement, but everything else indicated otherwise. The post-conviction court also noted that Petitioner had an extensive record and a "vast amount of experience in the courts of law and matter of guilty pleas." The post-conviction court commented, "probably one of the most extensive [records] I've seen in a long time." The post-conviction court found that there was nothing ambiguous about the twenty-three-year effective sentence and that the record did not support Petitioner's claim that his plea was involuntary. In a written order, the post-conviction court denied post-conviction relief on the grounds of ineffective assistance of counsel and an unknowing and involuntary guilty plea. Petitioner now appeals.

*Analysis*

Petitioner argues that the post-conviction court erred when it denied his petition finding that Petitioner received effective assistance of counsel and that his plea was voluntary. The State disagrees. We agree with the State.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

This Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley*, 960 S.W.2d at 578). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the post-conviction court. *Id.* at 456. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Id.* However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Id.* at 458.

## I. Ineffective Assistance of Counsel

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need

not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697). Whether a petitioner has been denied the effective assistance of counsel presents a mixed question of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Burns*, 6 S.W.3d at 462. This Court will not use hindsight to second-guess a reasonable trial strategy, even if a different procedure or strategy might have produced a different result. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). Because Petitioner's ineffective assistance of counsel claims relate to his guilty plea, in order to show prejudice he "must prove that counsel performed deficiently and 'there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.'" *Grindstaff v. State*, 297 S.W.3d 208, 217 (Tenn. 2009) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). "[A]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Hill*, 474 U.S. at 58 (quoting *Strickland*, 466 U.S. at 691).

Petitioner claims that he received ineffective assistance of counsel. However, in Petitioner's brief, he points to no facts which show that plea counsel was deficient. Petitioner merely states in a conclusory fashion, "The Petitioner submits that counsel's representation fell below the range of competence demanded of attorneys in criminal cases." In the next sentence, Petitioner mentions "his attorney's lack of attention to his

defense . . . ." Yet, Petitioner does not point to any specific flaw or unreasonable action taken by plea counsel. At the post-conviction hearing, plea counsel testified that he met with Petitioner multiple times, reviewed all of the discovery materials, and successfully bargained with the State for a lower sentence for Petitioner. Additionally, the post-conviction court accredited the testimony of plea counsel, and that determination rests solely with the post-conviction court. *See Fields*, 40 S.W.3d at 456. We fail to see how plea counsel's representation could be considered below an objective standard of reasonableness. Accordingly, Petitioner has failed to show that he received deficient representation.

*II. Voluntariness of Petitioner's Guilty Plea*

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). In that review, the court looks to the following factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from trial.

*Blankenship v. State*, 858 S.W.2d 897, 905 (Tenn. 1993) (citing *Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir. 1984). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Id.* at 904. A petitioner's solemn declaration in open court that his plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Petitioner also argues that he did not knowingly and voluntarily enter his plea agreement. At the post-conviction hearing, Petitioner claimed that he did not understand his sentence and that he thought he was receiving a fifteen-year sentence at thirty-five percent. However, Petitioner admitted on cross-examination that the trial court said that Petitioner would receive a twenty-three-year sentence with part of it being served at 100 percent and part of it being served at thirty-five percent. In response to that, Petitioner

attempted to explain that there were multiple ways to interpret twenty-three years. Regardless of how it is interpreted, we fail to see how twenty-three years translates to fifteen years. Petitioner was afforded numerous opportunities to ask questions at his plea hearing, but he turned them down. When specifically asked "23 years. You understand that, [Petitioner]?" Petitioner replied, "Yes, sir." At the plea hearing, Petitioner knew exactly what his sentence would be, twenty-three years.

When considering the aforementioned factors, we note that Petitioner only attended school through the fifth grade, but this is not necessarily indicative of Petitioner's intelligence, merely his schooling. The post-conviction court noted Petitioner's extensive record and indicated that Petitioner was familiar with criminal proceedings. Plea counsel was competent to represent Petitioner, and the record indicates that they had plenty of opportunities to confer about the options available to Petitioner. Plea counsel and the trial court adequately advised Petitioner of the nature of his plea. Additionally, the post-conviction hearing focused on Petitioner's understanding of the guilty plea, and no significant evidence was presented pertaining to the reasons for Petitioner's decision to plead guilty. Viewing the totality of the circumstances with the formidable barrier created by Petitioner's declaration at the plea hearing in mind, we hold that the evidence does not preponderate against the post-conviction court's finding that Petitioner's plea was knowing and voluntary.

*Conclusion*

For the aforementioned reasons, we affirm the judgment of the post-conviction court.

_____
TIMOTHY L. EASTER, JUDGE